IN THE UNITED STATES DISTRICT COURT
IN THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA, )
)
vs. ) Criminal 3:14-CR-11-J-39JRK
)
JOHN DEWEY TODD, )
Defendant. )

FILED
2020 NOV 30 PM 1:34
CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA

## EMERGENCY MOTION FOR COMPASSIONATE RELEASE

### I. Introduction

Comes Now, John Dewey Todd, pro se, hereafter "defendant," in this above styled action hereby respectfully requesting compassionate release pursuant under 18 U.S.C. §3582(c)(1)(A)(i). The foregoing chapter was amended by the First Step Act thus permitting a sentence reduction under "extraordinary and compelling circumstances" as determined by the district court.

### II. Statement of Jurisdiction

18 U.S.C. §3582(c)(1)(A), as amended by the First Step Act of 2018 now states (in part):

(c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed, except that--

(1) in any case--

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the Defendant after the Defendant has

fully exhausted all administrative rights to appeal a failure of
the Bureau of Prisons to bring a motion on the Defendant's behalf
or lapse of 30 days from the receipt of such a request by the
warden of the Defendant's facility, **whichever is earlier**, may
reduce the term of imprisonment (and may impose a term of ...
supervised release ... that does not exceed the unserved portion
of the original term of imprisonment), after considering the
factors set forth in section 3553(a) to extend that they are
applicable, if it finds that--

(i) extraordinary and compelling reasons warrant such a
reduction ... and that such a reduction is consistent with
applicable policy statements issued by the Sentencing Commission
... 18 U.S.C. §3582 (emphasis added).

As such, the statutory requirements are that the court:

(1) find that extraordinary and compelling reasons exist;

(2) consider the relevant sentencing factors under §3553(a);
and

(3) ensure that any reduction is consistent with Sentencing
Commission policy statements.

The Sentencing Commission has; however, not issued a policy
statement since the passage of the First Step Act of 2018. See
United States v. Beck, _F.Supp.3d_, 2019 WL 2716505, at *6
(M.D.N.C. June 28, 2019). As there is no policy statement,
courts have concluded: "the Court may independently evaluate
whether ⌊Defendant⌋ has raised an extraordinary and compelling
reasons for [sentence reduction]." United States v. Lisi, 2020

2

WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020). See also United States v. Redd, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020), United States v. Bradshaw, 2019 WL 7605447, at *3 (M.D.N.C. Sept. 13, 2019), and United States v. Fox, 2019 WL 3046086, at *3 (D.Me. July 11, 2019).

See also: U.S.S.G. §1B1.13, n.4; wherein the Commission concluded that reasons beyond medical illness, age, and family circumstances qualify as "extraordinary and compelling reasons" for resentencing. At n.1(A) - the Commission included a category for "other reasons," when there is an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C). See United States v. Fox, at *3 (D. Me. July 11, 2019) "I treat the previous BOP discretion to identify other extraordinary and compelling reasons as assigned now to the courts"; also United States v. Cantu, 2019 WL 2498923, at *4 (S.D. Tex. June 17 2019) (holding that the FSA changes granted discretion to the court to decide "extraordinary and compelling reasons.")

The defendant has to date exhausted all known administrative remedies; as such, this motion is both timely and proper before the district court.

## III. Argument

The defendant faces a significantly increased risk of a severe infection from COVID-19 due to his exposure to asbestos during his previous work environment. Asbestos exposure causes a

3

lifelong risk of inherent lung and respiratory ailments and has been proven and stated by the CDC as a contributing factor towards not only the increased risk, but in fact, more severe and life threatening cases of Covid 19. See United States v. Johnson, 2:14-CR-726, 6th Circuit, Aug. 15, 2020.

The same holds true for hypertension. See, eg., United States v. Sawicz, 453 F.Supp.3d 601, 604 (E.D.N.Y. 2020)(finding an "extraordinary and compelling reason" for compassionate release on the basis of the inmate's hypertension and conditions at FCI Danbury); United States v. Foreman, No. 3:19-CR-62(VAB), 2020 WL 2315908, at *2-4 (D. Conn. May 11, 2020)(finding an "extraordinary and compelling reason" for compassionate release on the basis of the inmate's hypertension and age of 58, in combination with conditions at FCI Danbury); United States v. Scparta, No. 18-CR-578 (AJN), 2020 WL 1910481, at *2, 9 (S.D.N.Y. Apr. 20, 2020)(finding an "extraordinary and compelling reason" for compassionate release on the basis of the inmate's hypertension, age 55, and conditions at FCI Butner, which had 60 infected inmates); United States v. Guzman Soto, No. 1:18-CR-10086-IT, 2020 WL 2104787, at *2 (D. Mass. May 1, 2020)(finding an "extraordinary and compelling reason" for compassionate release on the basis of the inmate's hypertension and the presence of 27 reported inmate cases in his facility); United States v. Pena, 459 F.Supp. 3d 544, 550 (S.D.N.Y. 2020)("This Court has repeatedly recognized that COVID-19 presents a heightened risk for individuals with hypertension.").

The defendant is 67 years of age at the time of this

4

instrument, older than nearly all of the above cited supporting cases. The same cases has heightened risk for severe Covid cases has already been recognized by the district court and holds true for obesity and diabetes, both of which the defendant suffers from, see Jesup/BOP attached medical records.

**If a defendant's heightened risk of severe infection from COVID-19 from the exposure to asbestos, obesity, diabetes or hypertension each independently serves as a basis to reduce a previously-imposed sentence to time served pursuant to §3582(c), then it is certainly not frivolous for the defendant to argue for a time served or modified sentence based on his heightened risk of severe infection due to suffering from ALL conditions,** especially considering the conditions at Jesup within the current outbreak, and the U.S.A. wide cases exceeding 250,000 per day.

In reviewing the attached medical records, It should be noted the following;

    a. Certified NIOSH "B" Reader, Certifying the defendant's asbestos exposure and risk.

    b. Bureau of Prisons Health Services reporting confirming:

        1. Hypothyroidism

        2. Obesity

        3. Hypertension

        4. Type 2 diabetes mellitus

        5. Hyperlipidemia

        6. Glaucoma

        7. Eustaclian Tube disorder

        8. Hearing loss

9. Rhinitis

10. Sinusitis

11. Chronic Obstructive Pulmonary Disease, COPD,
(see also United States v. King, 8th Circuit,
November 18, 2020, finding COPD to meet
"extraordinary and compelling circumstances" in
which the government recommended release.)(a
case from Jesup FSL).

The defendant also, in the past three (3) months, is
suffering from heart related issues, yet to be diagnosed by the
BOP. He has been pending a specialist visit for more than two
(2) months, yet to be completed, thus also creates severe risk
for Covid infection. Medical at Jesup noted the issues and has
perpetually delayed treatment.

At the current time, there are 19 staff members and 110
inmates, (per bop.gov/november 15, 2020), sick at Jesup with
Covid-19, additional inmates have not been tested at any regular
manner via temperature screening or actual test, or otherwise,
unless dire sick. It should be noted that the history at Jesup
to date reflects more than 63 staff infections and in excess of
485 inmate infections since March, 2020, per the BOP.

The BOP has failed spectacularly to observe its duty to keep
its charges safe. Here at Jesup, the staff have refused to wear
PPE, soap and sanitation supplies are handed out sparingly, if at
all, even as commissary fails to keep personal hygiene items in
stock ... when the inmates are even allowed to shop at all. The
PPE issued to both guards and inmates is woefully ineffective -

6

see: www.wtoc.com/2020/4/24/Jesup-prison-guards-concerned-over-covid-/ where a staff member demonstrates the poor quality to the PPE provided. At least staff have the ability to obtain their own, better quality PPE. Inmates do not have a choice. They are only allowed to wear the ineffective issued PPE. CDC guidance on sunlight exposure has been entirely ignored for the majority of the pandemic; social distancing signs have been posted everywhere, even as the inmates are crammed up to 60+ to a unit designed to hold 30, but with an extra 39 beds welded into cells that were meant to be single-occupancy when built. Some of these cells are only 58 square feet, but have these beds in them. Social distancing is absolutely impossible in this situation. Each unit is open-dorm, and inmate discontent has been met with brutal responses (on August 6, the inmates were attacked using pepperspray, brute force, and a violation of quarantine as Staff members were pulled from their posts in the quarantine unit) when the inmates, en mass, undertook a hunger strike to protest unconstitutional conditions. Staff members who only minutes previously had been within feet of confirmed cases of COVID-19 were at that time only feet away from "healthy" inmates while all were engulfed in a cloud of pepperspray INSIDE THE HOUSING UNITS. Everyone was coughing, and NONE of the staff had on PPE. The Court can confirm this by accessing the BP-A0583 and BP-A0586 forms that were filed by staff over this incident. Also, P.S.5566.03 requires all use of force incidents to be recorded on video. Defendant does not have access to these pieces of evidence, but the Court, as well as any attorneys, do. Defendant requests now for the Court to review these documents.

The Actions at Jesup have Caused Defendant's Sentence to Become "Immeasurably Greater Than Necessary."

COVID-19 must influence the length of imprisonment that is "sufficient but not greater than necessary" to meet the purposes of sentencing under §3553(a)(2)(A). In the age of COVID-19, this phrase takes on new meaning: "To avoid a sentence that is sufficient but no greater than necessary from becoming one immeasurably greater than necessary, the compassionate release of vulnerable inmates is appropriate;" United States v. Park, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020), finding release appropriate where "the actual severity of the sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing." Likewise, here, the actual severity of the sentence exceeds the Court's anticipated punishment. The BOP's measures implemented to combat COVID-19 are a matter of public record, and need no further interation here. The local policies, however, have not been overly-published. The administrative staff here at Jesup have four times now initiated communications blackouts. For a total of four weeks of the "modified operations" inmates have been unable to contact their loved ones or their attorneys. Commissary was completely shut down for more than a month depriving inmates of the ability to purchase stamps which effectively denied access to the mail system. The computers used for e-mail are outside of the housing units, so the lockdown has prevented their use, likewise with the law library. Even in normal operations, the law library stays 6-9 months behind in both statute and case law.

This means that inmates do not have up-to-date legal information, except what they manage to get mailed in.   It took a hunger strike before the inmates were even fed more than 1600 calories a day.   Since that time, the staff has even removed the soap dispensers in the bathrooms.   These factors should influence the length of sentence appropriate for the crime.

The defendant has to date both a minimum PATTERN SCORE and MINIMUM Custody classification score.   Attached herein.   Also and as a part of consideration, the court should consider the defendant's self-rehabilitation as a component of this action. See Gall v. United States, 552 U.S. 38, 59 (2007)("The District Court quite reasonably attached great weight to Gall's self-motivated rehabilitation, which was undertaken ... on his own initiative"); see also Pepper v. United States, 562 U.S. 476, 491-492 (2011)("As the original sentencing judge recognized, the extensive evidence of Pepper's rehabilitation since his initial sentencing is clearly relevant to the selection of an appropriate sentence in this case.").   In the current matter, the defendant has taken many programs and self rehabilitation courses, has a clinical assessment indicating, in summary, he is unlikely to reoffend, and has managed to rebuild his family ties in light of the seriousness of his crime.   His continued self-rehabilitation "sheds light on the likelihood that he will not engage in future criminal conduct, a central factor that district courts must assess when imposing sentence."   Pepper, 562 U.S. at 492.

Consequently, the defendant's request for a time served sentence is not unreasonable, particularly given his mitigation arguments. The defendant has served almost eighty-three (83) months in pretrial detention and prison, combined, which means the defendant has served over the national average Guidelines sentence issued under his guidelines. The defendant's continued incarceration significantly increases his exposure to COVID-19, as it is extremely difficult for a prison inmate to self-quarantine or keep socially distant from other inmates. His risk of exposure would obviously be much lower at home where he can self-quarantine and keep socially distant from others.

Lastly, the week ending November 23, 2020, the country has seen more that 250,000 new daily cases, the highest yet, and the tally's grow higher each day. As the court is aware, the defendant requested counsel previously, and as of the date of this instrument, motion has not been ordered either way. Due to the growing number of daily cases, the number of Jesup staff infected, the opening of visitation, and the lack of preparedness and/or the lack of following the CDC guidelines here at Jesup, the defendant has grave concerns for life and has now prepared this motion without counsel. The defendant yet renews his request for counsel, if the court should deem the same appropriate.

## IV. Conclusion

Based on the foregoing, the defendant respectfully requests that the court **GRANT** compassionate release as outlined herein.

The defendant poses no objection to a modified term of supervision up to and inclusive of GPS monitoring and home confinement as many districts have done, inclusive of the Eleventh Circuit, for introductory periods of home confinement after ordering compassionate release. See U.S. v. Griggs, 05/22/2020, 18 months GPS; U.S. v. Miller, 07/30/2020, 6 months home confinement; U.S. v. Moit, 06/29/2020, 36 months home confinement; U.S. v. Rachal, 06/30/2020, 6 months GPS: U.S. v. Scott, 08/11/2020, 2 months home confinement. All cases here in are specifically relating to Covid 19 and compassionate release under 18 U.S.C. §3582. The defendant reiterates his minimum custody points, minimum PATTERN score, and no disciplinary actions.

The defendant further requests that this instrument and attachments to be sealed or redacted to protect medical privacy of the same.

Respectfully submitted,

*John Dewey Todd*

John Dewey Todd
#60135-018
FSL Jesup
2680 U.S. Highway 301 South
Jesup, GA 31599

Encl. 1. Asbestos NIOSH
      2. BOP Health Problems
      3. Phychological Review
      4. Custody Classification/BOP
      5. Pattern Score
      6. Reference letter/family
      7. BOP exhausted remedies forms