UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                            CASE NO. 3:14-cr-11-BJD-JRK

JOHN DEWEY TODD

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S "EMERGENCY" MOTION FOR RECONSIDERATION OF DEFENDANT'S "EMERGENCY" MOTION FOR COMPASSIONATE RELEASE AND RESPONSE TO ORDER TO SHOW CAUSE**

The United States opposes defendant John Dewey Todd's *pro se* emergency motion for reconsideration of his emergency motion for compassionate release based on COVID-19 concerns. Doc. 55. The defendant has sexually exploited children through his production of videos of child sexual abuse material and his collection of this same material. His victims in the videos he produced were 5 and 8 at the time of the commission of Todd's crimes. Since the filing of his emergency motion for compassionate release on November 30, 2020 (Doc. 50), he has now been fully vaccinated against the virus (*see* Ex. 1 at 72)[1] by the Bureau of Prisons ("BOP"), which has implemented a COVID-19 action plan to minimize the risk of further transmission into and throughout its facilities.[2]  His health conditions are being appropriately

---

[1] Defendant's medical records, bates stamped 1-109, are submitted as Exhibit One, under seal, pursuant to the Court's Order dated September 14, 2021.
[2] *See* BOP Implementing Modified Operations, available at www.bop.gov/coronavirus/covid19_status.jsp (last accessed on Sep. 30, 2021).

monitored and managed. The defendant's fear of catching COVID-19, despite being vaccinated, is a fear shared by many. But it is not an extraordinary and compelling reason to prematurely release this defendant into our community.

As such, the United States respectfully requests that the Court deny the defendant's motion for reconsideration, or, in the alternative, deny the motion for compassionate release anew.

**I. Background**

The defendant was sentenced in February 24, 2015. Doc. 46. After being fully apprised of the defendant's various health problems (*see* Doc. 39 at 12), to include a bad right hip, high blood pressure, hypothyroidism, gout and lower back problems, this Court sentenced him to 235 months' imprisonment in connection with his convictions for producing child pornography and receiving child pornography. *See* Doc. 46 (Judgment). As noted in a psychologist's letter that also details his physical condition, in January 2014, Dr. Krop stated that the defendant's gout, hypertension, and thyroid condition were "all controlled with medication." Doc. 55-3 at 3. As recently as August 2021, the defendant reported a scrape to his knee playing softball. *See* Ex. 1 at 3.

Defendant is currently incarcerated at FCI Jesup in Georgia, is 67 years old, and is projected to be released on September 23, 2030. *See* BOP Inmate Locator at https://www.bop.gov/inmateloc/ (last accessed on September 30, 2021). The United States is cognizant of inmate concerns stemming from COVID-19. The United States, nor the BOP, minimize the concern or risk; this unique situation is being diligently

monitored. The BOP has taken aggressive action to mitigate the effects of COVID-19, and has been taking proactive steps to prevent potential coronavirus transmissions for months. Crucially, although the defendant implies to this fact in his motion for reconsideration, on March 9, 2021, he received his second dose of the COVID-19 Moderna vaccine. *See* Ex. 1 at 73. That is, he is fully vaccinated against the virus.

Under these circumstances, the United States opposes the defendant's request for immediate release and respectfully requests that his motion be denied.

## II. Medical Records

Defendant's medical records, stamped 1-109, filed in support as Exhibit One, under seal, pursuant to the Court's Order dated September 14, 2021, establish the defendant engages in recreational sports (Ex. 1 at 2), he recently reported having excellent blood pressure (*id.* at 17), and an assessment indicates there is "excellent control" of his Type 2 diabetes (i*d.* at 20 and 39). Further, examinations in February 2021 and August 2021 both reveal "lung sounds clear bilaterally." *Id.* at 3 and 22-23. While in custody, he has been tested for COVID-19 (*id.* at 29) with negative results. *Id.* at 71. Also, as noted above, he is fully vaccinated. *Id.* at 73.

The records indicate the defendant has failed to accept treatment recommended by his healthcare professionals, as he has refused to take medications as prescribed (*id.* at 21 and 31), he refused a colonoscopy despite recommendation by the medical doctor (*id.* at 34), and he has refused treatment for a bleeding hemorrhoid recommended by the Federal Bureau of Prisons medical staff. *Id.* at 109.

The ailments of which he complains are appropriately managed and under control. Ex. 1 at 39. Lab results reported on July 7, 2021, show nearly all measurements to be within normal range, with the exception of creatinine, glucose, triglycerides, HDL cholesterol, cholesterol ratio, and hemoglobin, of which none are critically high or critically low. Ex. 1 at 80-81.

While the records indicate a body mass index of 31.6 (*id.* at 64), this measurement was calculated on July 14, 2020. While the records show his weight has fluctuated, the defendant weighed 256 pounds on January 9, 2021. *Id.* at 42. The most recent weight reflected in the medical records shows a weight of 247.5 on August 19, 2021. *Id.* at 52. Thus, it appears the defendant has heeded the weight loss counseling he has received as he has lost more than 8 pounds. *Id.* at 60. The records also suggest that he is physically active given the reference to the defendant playing softball. *Id.* at 2.

### III. Memorandum of Law

"Now that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions based on COVID-19 generally lack merit." *United States v. Stafford*, 3:17-cr-00230-BJD-MCR, Doc. 56 at 4 (M.D. Fla. Sept. 13, 2021) (unpublished order; quoting *United States v. Reed*, No. 18–CR–0078, 2021 WL 2681498, at *4 (E.D. Pa. Jun. 30, 2021)).

## A. The Defendant Fails to Meet his Burden for Either Reconsideration or Compassionate Release.

"[T]here are three major grounds which justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002) (alteration added; citations omitted). "A motion for reconsideration cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the [Court's ruling]." *Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010) (alteration added; quotation marks and citation omitted). The defendant asserts that his motion for reconsideration is based on material changes in circumstance. Doc. 55. Given the totality of his motion, the United States infers that the defendant wishes to proceed on the availability of new evidence ground.

Todd's motion for compassionate release claimed a significant increase risk of a severe infection from COVID-19 due to hypertension, obesity, diabetes, his age, and his prior exposure to asbestos. Doc. 50. In his motion for reconsideration, he references the same medical conditions but adds thyroid disease, cardiovascular disease, and high cholesterol, and requests the Court also consider his prior cooperation with law enforcement on the day of the search warrant in ruling on his motion to reconsider his motion for compassionate release. Doc. 55 at 6-8.

However, the additional information on which he now relies was known to him at the time of the filing of his motion for compassionate release. While the defendant

5

claims he suffers from cardiovascular disease, and he saw a cardiologist on January 28, 2021 (Doc. 55-5 at 7), his diagnosis is stated as "ESSENTIAL (401.9 | I10), which according to the American Academy of Family Physicians is essential hypertension, unspecified. https://www.aafp.org/fpm/2014/0300/p5.html. The defendant claims that, as the pandemic continues, additional information has become known about the risk factors he faces. The United States opposes the defendant's motion for reconsideration as it fails to justify reconsideration.

As the movant, the defendant bears the burden to establish that he is eligible for compassionate release. *United States v. Kannell*, 834 Fed. App'x 566, 567 (11th Cir. 2021) (unpublished *per curiam*; citing *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014)). A court may reduce a defendant's sentence and release him only if he establishes that there are "extraordinary and compelling circumstances" warranting release that are consistent with applicable policy statements of the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement addressing sentence reductions under § 3582(c)(1)(A) provides examples of qualifying "extraordinary and compelling reasons" including (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13, comment. n.1. Even when an extraordinary and compelling reason exists, however, a court should only grant a motion for release if it determines that the defendant is not a danger to the public. USSG § 1B1.13(2). As

this Court already decided, even assuming the defendant could and had met his burden, the factors provided in 18 U.S.C. § 3553(a) weigh heavily against release.

As the Eleventh Circuit has held, even after the passage of the First Step Act, Section 1B1.13's definition of "extraordinary and compelling" reasons applies to defendant-initiated motions for compassionate release. *United States v. Bryant*, 996 F.3d 1243, 1248 (11th Cir. 2021). Further, "Application Note 1(D) does not grant discretion to courts to develop 'other reasons' that might justify a reduction in a defendant's sentence." *Id.*

Accordingly, the defendant's assertions that he should be afforded consideration on his motion for compassionate release because he confessed his criminal activity should be rejected as they are not legally relevant considerations in this proceeding. *See Bryant*, 996 F.3d at 1248. Whether or not he confessed and accepted responsibility for his crimes is irrelevant to whether he has a serious illness that is either terminal or substantially diminishes his ability to provide self-care within a correctional facility – the relevant standard for determining whether there are "extraordinary and compelling reasons" warranting release. *See* USSG § 1B1.13, comment. n.1.

In addition to his claim that he should be granted consideration for his confession, his Emergency Motion for Reconsideration also references thyroid disease and high cholesterol, neither of which are included in the Center for Disease Control's (CDC) list of conditions that can cause an individual to be more likely to get severely ill from COVID-19.

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Oct. 1, 2021).

The defendant again references his past exposure to asbestos. The medical records include one page documenting some effect from asbestos exposure noted in 1998. However, the records of examinations from the defendant's term of incarceration note no respiratory symptoms (*id.* at 65) and clear sounding lungs. *Id.* at 3 and 22. The defendant has no diagnosis from his reported asbestos exposure that would place him at a higher risk of COVID-19. This is not a sufficient basis for compassionate release.

**B.     Given the Defendant's Vaccination Status, There Are No Extraordinary and Compelling Reasons Justifying His Early Release.**

Even considering the defendant's medical conditions detailed above, his request for a sentence reduction and his immediate release should be denied as has not met his burden to demonstrate "extraordinary and compelling reasons" warranting release.

The CDC has cautioned that having hypertension, diabetes type 2, and obesity "can make you more likely to get severely ill from COVID-19." *See* www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Oct. 1, 2021). To qualify as "extraordinary and compelling," an inmate's medical condition must be "serious and advanced … with an end of life trajectory," or must be serious enough that it "substantially diminish[es] the ability of the [inmate] to provide self-care with the environment of a correctional facility and … *he or she is not expected to recover [from it]*." *United States v. McCloskey*, No.

4:18-cr-260, 2020 WL 3078332, at *5 (S.D. Ga. June 9, 2020) (citing USSG §1B1.13, cmt. n.1(a)(i)) (emphasis added). According to the BOP Program Statement 5050.50, to qualify for early release consideration based on debilitated medical condition, a defendant must "have an incurable, progressive disease or … have suffered a debilitating injury *from which [he] will not recover*." BOP Program Statement 5050.50, § 3.b (emphasis added).

Vaccines permit effective self-care against severe illness or death that may be caused by the coronavirus. The CDC has consistently and strongly advised that every person 12 years of age and older receive one of the vaccines that has received emergency use authorization from the FDA. The CDC states that the vaccines are effective in preventing COVID-19, and "[a]dults 65 years old and older who were fully vaccinated with an mRNA COVID-19 vaccine (Pfizer-BioNTech or Moderna) had a 94% reduction in risk of COVID-19 hospitalizations…" *See* www.cdc.gov/aging/covid19/covid19-older-adults.html (last accessed Oct. 1, 2021).

The vaccines were the subject of extensive clinical trials before authorization, which revealed high effectiveness in preventing infection, and particularly in preventing severe illness or death. The data thus far show remarkable success in the real world. The CDC reports that as of September 27, 2021, there are more than 183 million Americans who have been fully vaccinated. Within that group, only approximately 16,889 hospitalizations from symptomatic "breakthrough infections" have been reported, and only approximately 5,226 deaths (or 0.002856% of the fully

vaccinated population). *See* www.cdc.gov/vaccines/covid-19/health-departments/breakthrough-cases.html (last accessed Oct. 1, 2021).

There has been widespread recent reporting that the Delta variant of COVID-19 is now the most prevalent variant causing new infections in the United States, posing a significant risk to unvaccinated persons. The CDC reports, however, that the approved vaccines are proving highly effective against the Delta variant, stating, "FDA approved or authorized COVID-19 vaccines protect against Delta and other known variants." The CDC adds: "Infections happen in only a small proportion of people who are fully vaccinated, even with the Delta variant. Vaccine breakthrough infections are expected, but vaccines are effective at preventing most infections."[3]

Accordingly, once a vaccine is available to an inmate, compassionate release is not warranted based on the threat of COVID-19 alone. *See, e.g., Reed*, 2021 WL 2681498, at *4 ("Now that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions [based on COVID-19] generally

---

[3] *See* www.cdc.gov/coronavirus/2019-ncov/variants/variant.html?CDC_AA_refVal= https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Ftransmission%2F variant.html (last accessed Oct. 1, 2021); *see also* https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (last accessed Oct. 1, 2021) ("Vaccines . . . are highly effective, including against the Delta variant.").

lack merit."). Courts have agreed with this conclusion almost unanimously.[4] Courts now routinely deny relief to an inmate who has been vaccinated.[5]

In sum, absent a significant change in the current scientific assessment regarding the efficacy of the vaccines, the advent of widespread vaccine availability should end the unprecedented period in which compassionate release has been considered based on the threat of the virus. Instead, sentence reductions based on medical conditions once again should be limited to extraordinary conditions that are terminal or severely limit an inmate's ability to function in a correctional setting. *See, e.g.*, *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (relief is "rare" and

---

[4] The citations provided in this memorandum represent just a fraction of the consistent decisions in recent months denying motions of defendants who are vaccinated.

[5] *United States v. Wills*, 2021 WL 2179256, at *1 (D. Or. May 27, 2021) (collecting cases); *United States v. McBriarty*, 2021 WL 1648479, at *6 (D. Conn. Apr. 27, 2021) ("Given current understanding, the Pfizer vaccine is so effective at preventing serious illness from COVID-19 that the threat of McBriarty's becoming seriously ill is miniscule—and certainly not extraordinary and compelling."); *United States v. Harris*, 2021 WL 1516012, at *2 (D. Md. Apr. 16, 2021) (recognizing that "there can be no bright-line rule that a vaccinated individual is no longer at compellingly elevated risk, but in most instances, the risk of complications is dramatically reduced," and concluding that the defendant's vaccination status removes his borderline obesity from the category of risk constituting an 'extraordinary and compelling reason' to consider compassionate release."); *United States v. Hannigan*, 2021 WL 1599707, at *5-6 (E.D. Pa. Apr. 22, 2021) ("Other courts . . . have agreed that the protection provided by an authorized COVID-19 vaccination reduces the risk of serious illness from COVID-19 to such a degree that the threat of the pandemic alone cannot present an extraordinary and compelling reason for compassionate release.") (citing cases); *Gale v. United States*, 2021 WL 1912380, at *3 (E.D. Va. May 12, 2021) (relief is denied notwithstanding obesity, chronic kidney disease, and hypertension, in light of vaccination and CDC information regarding efficacy; "With this information from the CDC and knowing that Petitioner is fully vaccinated and in an environment in which many of the inmates within his facility are also vaccinated (and continuing to be vaccinated), the Court cannot conclude that Petitioner's circumstances are so extraordinary as to warrant release from incarceration").

"extraordinary"); *United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) ("[A] defendant's medical condition must be one of substantial severity and irremediability."). At present, the defendant does not present any such condition. He is stable, mobile, and able to participate in physical activity. His ailments are managed with the medical care he is receiving. Under such circumstances, his motion should be denied.

**C.    The Defendant Is a Dangerous Sex Offender, and Accordingly, the Applicable § 3553(a) Factors Strongly Weigh against Granting Compassionate Release.**

The defendant's motion should be denied for the additional and independent reason that his premature release would endanger the community. This Court must deny a motion for release unless it determines that the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Additionally, the Court must consider the applicable 18 U.S.C. § 3553(a) factors as part of its analysis. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). These considerations all weigh against cutting this defendant's sentence short.

As discussed above, the defendant is in prison for producing child pornography and for receiving child sexual abuse material over the Internet. During a post-*Miranda* interview with law enforcement, he admitted to collecting child pornography for a "couple of years." Doc. 33 at 18. A search of his residence and devices that he had amassed a cache of at least 12,000 images and videos depicting children being sexually abused. *Id.* His collection spanned over 51 separate discs and five thumb drives, all

secreted in hiding spots throughout his home. He kept a collection of files showing children being raped on his cell phone and his computer as well. *Id.* at 20. The files showed prepubescent children bound and adults sexually penetrating them. *Id.* The defendant produced his own child pornography, surreptitiously filming two young children who visited his home. *Id.* The defendant installed secret cameras to capture a 5-year-old and 7-year-old child in the nude. The camera angle set by the defendant captured the genitals of the children and their small nude bodies. These are children to whom the defendant had access.

The defendant submitted a letter in support of his release from an individual who has grandchildren he would leave in the defendant's care. Doc. 55-6. In his letter, the author details the daycare in his home for 37 years and that "[h]e had kids climbing all over him the whole time." *Id.* All the while, the defendant was collecting and compiling his stockpile of videos and images of child rape and abuse. Although the author of the letter is willing to place his grandchildren in the defendant's care, the defendant is no longer permitted to have direct contact with children without approval from his probation officer. Doc. 46 at 5. This is a good thing. The defendant exploited the children he filmed. The defendant exploited thousands of children depicted in the videos and images of their darkest days that he consumed.

He received a sentence at the low end of the advisory guideline range, and he should serve the duration of the sentence imposed by this Court. These facts show that the 235-month sentence imposed by the Court appropriately reflects, among other things, "nature and circumstances of [the defendant's very serious] offense[s]" of

conviction; his "history and characteristics" as years-long collector of a massive quantity of child sexual abuse material, and the need both to deter him from resuming exploiting children and to protect the public from those crimes. *See* 18 U.S.C. § 3553(a). Under these circumstances, there is no reason to second-guess the original sentence imposed in this case and prematurely release the defendant.

## IV. Cause for Failure to Timely Respond

The United States failed to timely respond to this Court's Order of September 14, directing a response no later than September 28, 2021. While the notice of the Order came by e-mail through the Court's electronic filing system, the undersigned overlooked the filing and neglected to calendar the due date consistent with normal practice. The undersigned regrets any inconvenience caused by the submission of this response out of time, and apologizes to the Court and the defendant for the error.

## CONCLUSION

For the foregoing reasons, this Court should deny the defendant's *pro se* motion for compassionate release based on COVID-19.

Respectfully submitted,

KARIN HOPPMANN
Acting United States Attorney

By:  /s/  *Kelly S. Karase*
KELLY S. KARASE
Assistant United States Attorney
USA No. 134
300 North Hogan Street, Suite 700
Jacksonville, Florida  32202-4270
Tel:   (904) 301-6300   Fax: (904) 301-6310
E-mail:  Kelly.Karase@usdoj.gov

U.S. v. JOHN DEWEY TODD                              Case No. 3:14-cr-11-BJD-JRK

# CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2021, a true and correct copy of the foregoing document and the notice of electronic filing was sent to the following by mail:

> John Dewey Todd, *Pro Se*
> Reg. No. 60135-018
> FCI Jesup
> Federal Correctional Institution
> 2680 Highway 301 South
> Jesup, GA 31599

/s/  *Kelly S. Karase*
KELLY S. KARASE
Assistant United States Attorney

15